## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SYNERGISTIC INTERNATIONAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-3299 |
| | ) | |
| BECKY S. MONAGHAN, individually; | ) | |
| MICHAEL D. MONAGHAN, Individually; GLASS RX, INC.; and GLASS 1 ONE, INC. d/b/a GLASS ONE OF QUINCY, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on Defendants' Motion to Compel Mediation and/or Arbitration and to Dismiss or Stay Proceedings Pending the Completion of Mediation and/or Arbitration pursuant to Federal Rule of Civil Procedure 12(b)(6), Local Rule 16.4 Alternative Dispute Resolution, §§ 3 and 4 of the United States Arbitration Act, 9

U.S.C. §§ 1-16 and the general authority of the Court (d/e 16). Defendants' Motion is DENIED.  Plaintiff has demonstrated that this action falls under the Franchise Agreement's exceptions to the requirement that the parties settle any controversy or claim arising out of or relating to the Franchise Agreement using alternative dispute resolution.

## I.  <u>BACKGROUND</u>

On June 26, 2002, Synergistic International, Inc., predecessor in interest to Plaintiff, Synergistic International, LLC, entered into a Franchise Agreement with Vance Door, Inc., whereby Vance Door, Inc., agreed to operate as Plaintiff's Franchisee in and around Quincy, Illinois. Defendant Becky S. Monaghan was President, Agent, and Operating Principal of Vance Door, Inc.  Defendant Becky Monaghan signed as guarantor of the Franchisee's obligations under the Franchise Agreement. By signing as guarantor, Defendant Becky Monaghan accepted and agreed "to all of the provisions, covenants, conditions, representations, warranties and agreements set forth in the [Franchise] Agreement and [was] obligated to perform thereunder."  <u>See</u> d/e 1, Ex. 1 at 29.

The Franchise Agreement required Vance Door, Inc., to operate under the franchise System.  The System included use of "the service mark GLASS DOCTOR®, the slogan, WE FIX PANES®, and the GLASS DOCTOR logo and such other trade names, service marks and trademarks as are now and may hereafter be designated by Franchisor for use in connection with the System . . . ."  See d/e 1, Ex. 1 at 2.

The Franchise Agreement contains a Texas choice-of-law provision. However, an Addendum to the Franchise Agreement for Illinois Residents, also executed by the parties on June 26, 2002, states:

> If any of the provisions of the Franchise Agreement are inconsistent with applicable Illinois state law, then Illinois state law shall apply.  Any provision which designates jurisdiction or venue in a forum outside Illinois is void with respect to any cause of action which is otherwise enforceable in Illinois, provided that a Franchise Agreement may provide for arbitration in a forum outside of Illinois.

See d/e 1, Ex. 1 at 27-28, 30.

Section 14 of the Franchise Agreement also states that disputes arising out of the contract shall be settled using mediation and then arbitration:

A.        **Agreement to Use Procedure.**  Franchisor and Franchisee have entered into this Agreement in good faith

and in the belief that it is mutually advantageous to them. It is with this same spirit of cooperation that they pledge to attempt to amicably resolve any controversy or claim arising out of or relating to this Agreement or the breach thereof or any transaction embodied therein or related thereto (a "Dispute"), without the necessity of litigation. Therefore, if any Dispute arises, the parties shall utilize the procedures described herein before commencing any legal action.  If a party commences any legal action, other than as provided for in Section 14.K. hereof, without having first complied with all of the provisions of this Section 14 regarding mediation and arbitration, the other party shall be entitled to a sixty (60) day abatement of the legal action upon filing the appropriate procedural motion in the legal proceeding and bringing this provision to the attention of the court or other legal authority having jurisdiction over the matter.

B.        **Initiation of Procedure.**  Should a Dispute arise, the initiating party shall give written notice to the other party, describing the exact nature of the Dispute, its claim for relief and identifying one or more individuals with authority to resolve the Dispute on such party's behalf. The other party shall have (10) business days within which to designate in writing one or more individuals with authority to resolve the Dispute on it's behalf ("Authorized Individuals").

****

J.        **Arbitration.**  In order to resolve Disputes which may arise between them more effectively and thereby further their mutually beneficial business relationship, the parties to this Agreement agree that if they are not able to resolve the Dispute through . . .  mediation . . . , the controversy shall be submitted to binding arbitration. . . . The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16.

See d/e 1, Ex. 1 at 24-26.

However, at Section 14.K., the Franchise Agreement contains

exceptions to using the alternative dispute resolution processes in Section

14 of the Franchise Agreement:

> K.         **Emergency Relief.**  During the course of a Dispute,
> should a situation arise relating to the Marks or relating to
> a situation in which Franchisor will suffer irreparable loss
> or damage unless Franchisor takes immediate action,
> including but not limited to threatened or actual conduct
> in violation of Sections 10 and 13 of this Agreement,
> Franchisor shall be free to seek declaratory relief,
> restraining orders and/or preliminary injunctive relief
> and/or other relief, and such actions or lawsuits shall not be
> considered in violation of the provisions of this Section 14.

See d/e 1, Ex. 1 at 25.

Section 10 of the Franchise Agreement, titled Proprietary

Information and Covenants, protects Plaintiff's franchise specific

manuals and confidential information and trade secrets.  See d/e 1, Ex. 1

at 15-16 (Sections 10.A. and B.).  Section 10.C. sets forth the **In-Term &**

**Post-Term Covenants**:

> Recognizing that Franchisor would be unable to protect
> its trade secrets against unauthorized use or disclosure and
> would be unable to encourage a free exchange of ideas and
> information among its franchisees if its franchisees were

permitted to hold interests in any business other than the Franchise which offers or sells any product or service or component thereof which composes a part of Franchisor's System or which competes directly or indirectly with the Franchise or Franchisor's System ("Competing Business") and acknowledging that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including, without limitation, information concerning the operational, sales, promotional, and marketing methods and techniques of Franchisor and Franchisor's System, Franchisee therefore covenants and agrees that, except for any interest which Franchisee has in a Competing Business which is identified on Exhibit "A" hereof, to which Franchisor specifically consents, Franchisee shall not directly or indirectly, as a proprietor, partner, investor, shareholder, member, director, officer, employer, employee, principal, agent, adviser, franchisor, franchisee or in any other individual or representative capacity or otherwise:

1.      During the term of this Agreement and any extensions thereof:

(a)     engage in or participate in or derive any benefit from a Competing Business without Franchisor's prior written consent.  If Franchisor grants permission for Franchisee to engage in the operation of a Competing Business other than as set forth above, Franchisee shall pay Franchisor a Royalty Fee in accordance with Section 3.C. herein in addition to any other sums owed to Franchisor unless specifically waived in writing by Franchisor; and

(b)     employ, seek to employ or otherwise induce any person who is employed by Franchisor or any other franchisee to leave his employment; or

(c)     interfere or attempt to interfere with any of the business relationships and/or advantages of Franchisor or any other franchisee; or

(d)     use any Confidential Information whatsoever in any manner which is or is intended to be damaging or derogatory or hinder the relationship of Franchisor with its other franchisees, customers, suppliers or other third parties, or the relationship of any other franchisee with its customers or suppliers; or

(e)     divert, attempt to divert, solicit, or endeavor to obtain any customer, account or business from Franchisor or any other franchisee.

2.     for a period of two (2) years immediately following the later of the expiration, termination or non-renewal of this Agreement for any reason whatsoever or the date on which Franchisee actually ceases operation of the Franchise:

(a)     engage in or participate in or derive any benefit from a Competing Business (other than as set forth above) in the Territory without Franchisor's prior written consent.  If Franchisor grants permission for Franchisee to engage in operation of a Competing Business other than as set forth above, Franchisee agrees that Franchisee will pay Franchisor a Royalty Fee in accordance with Section 3.C. herein in addition to any other sums due and owing to Franchisor; or

(b)     employ, seek to employ or otherwise induce any person who is employed by Franchisor or any other franchisee to leave his employment; or

(c)   interfere or attempt to interfere with any of the business relationships and/or advantages of Franchisor or any other franchisee; or

(d)   use any Confidential Information whatsoever in any manner which is or is intended to be damaging or derogatory or hinder the relationship of Franchisor with its other franchisees, customers, suppliers or other third parties, or the relationship of any other franchisee with its customers or suppliers; or

(e)   divert or attempt to divert any customer or business from Franchisor or any other franchisee or solicit or endeavor to obtain the business of any person who shall have been a customer of Franchisee's Franchise.

****

See d/e 1, Ex. 1 at 16-18.

Section 13 relates to the Franchisee's obligations upon termination or non-renewal of the Franchise Agreement.  See d/e 1, Ex. 1 at 22-23. The Franchisee's obligations include ceasing use of the Franchisor's methods of operation, ceasing use of Franchisor's Marks, transferring the Franchise to Franchisor, transferring the customer and/or customer lists and services to Franchisor, ceasing use of any telephone numbers listed in a phone book under the name GLASS DOCTOR® or any other name confusingly similar to GLASS DOCTOR®, paying debts to third-parties

and Franchisor, returning certain materials to Franchisor, resolving all warranty claims or customer disputes, and not indicating that Franchisee was a former franchisee of Franchisor.  See d/e 1, Ex. 1 at 22-23.

On December 30, 2003, Vance Door, Inc., assigned the Franchise Agreement to Defendant Glass Rx, Inc.  Defendant Becky Monaghan is President, Agent, Operating Principal, and owner of Glass Rx, Inc. Again, Becky Monaghan signed as guarantor of the Franchisee's obligations to comply with all provisions of the Franchise Agreement.  In February and July of 2004, the Franchise Agreement was amended to add additional business and counties to the franchise territory in West Central Illinois and Eastern Missouri.

Also in 2004, Defendant Michael Monaghan entered into a Confidentiality Agreement with Plaintiff.  The Confidentiality Agreement includes a Covenant Not to Compete in which Defendant Michael Monaghan promised not to divert business or in any other way compete with Plaintiff during the term of the Franchise Agreement and for two years following termination of the Franchise Agreement.  See d/e 1, Ex. 1 at 61.  The Confidentiality Agreement also contains a Texas choice-of-

law section, a Waco, McLennan County, Texas forum selection clause,
and a section that states the Confidentiality Agreement constitutes the
entire understanding between Plaintiff and Defendant Michael
Monaghan.  See d/e 1, Ex. 1 at 61.  The Confidentiality Agreement does
not contain a provision that mandates alternative dispute resolution for
disputes arising out of or relating to the Confidentiality Agreement.

On June 26, 2012, the Franchise Agreement expired.  On that same
day, Defendants Glass Rx, Inc., and Glass 1 One, Inc., entered into a
purchase agreement for sale of assets.  Defendant Michael Monaghan is
sole shareholder and owner of Defendant Glass 1 One, Inc.  Later, on
July 27, 2012, Plaintiff sent Defendant Becky Monaghan, President of
Defendant Glass Rx, Inc., a letter accepting Defendants' non-renewal of
the Franchise Agreement.  See d/e 1, Ex. 14 at 2-4.

Plaintiff alleges that following termination of the Franchise
Agreement, Defendants breached their contractual obligations by failing
"to abide by the post-term non-compete and trademark cessation
provisions of the Franchise Agreement . . . ."  See d/e 1 at ¶ 4.
Specifically, Plaintiff alleges that Defendants have, among other things,

intentionally diverted and continued to intentionally divert business from Defendants' former GLASS DOCTOR® franchise to a new business, which is operating in the same territory under the name "Glass One of Quincy."  Plaintiff alleges further that Defendants have continued using the identical GLASS DOCTOR® service marks, or substantially indistinguishable versions thereof, in connection with that new business and that Defendants have falsely informed customers that Defendants' former GLASS DOCTOR® franchise has merged with and operates in "combination [with] several companies" as "Glass One."  See d/e 1 at ¶ 4.

On November 9, 2012, Plaintiff filed a nine-count Complaint against Defendants that alleges: (1) Federal Service Mark Counterfeiting as to All Defendants; (2) Federal Service Mark Infringement as to All Defendants; (3) Federal Unfair Competition and False Designation of Origin as to All Defendants; (4) Common Law Trademark and Service Mark Infringement and Unfair Competition and Injury to Business Reputation as to All Defendants; (5) Breach of In-Term and Post-Termination Non-Compete Provisions of the Franchise Agreement as to Defendants Glass Rx, Inc., Becky Monaghan, and Glass 1 One, Inc., as

Alter Ego of Glass Rx, Inc.; (6) Breaches of the Franchise Agreement for failing to return materials, customer lists, and phone numbers as to Defendants Glass Rx, Inc., Glass 1 One, Inc., and Becky Monaghan; (7) Common Law Tortious Interference with a Contract or Advantageous Business Relationship or Expectancy as to Defendants Michael Monaghan and Glass 1 One, Inc.; (8) Breach of the Guaranty Agreements as to Defendant Becky Monaghan; and (9) Breach of the Confidentiality Agreement as to Defendant Michael Monaghan.  See d/e 1, 29-41.  Plaintiff seeks injunctive relief, money damages, and attorney's fees and costs.  See d/e 1 at 41-43.

On January 7, 2013, Defendants filed the instant Motion to Compel Mediation and/or Arbitration and to Dismiss or Stay Proceedings Pending the Completion of Mediation and/or Arbitration. See d/e 16.  Plaintiff filed a Response to the instant Motion on January 25, 2013 that argues the claims in Plaintiff's Complaint relate to Plaintiff's Marks, Plaintiff's proprietary information, or the covenants in the Franchise Agreement.  Accordingly, Plaintiff asserts, all nine Counts are properly before the Court.

## II.  LEGAL STANDARD

When deciding a motion to dismiss, the court must assume all facts alleged in the complaint to be true, construe the allegations liberally, and view the allegations in a light most favorable to the plaintiff.  Wilson v. Formigoni, 42 F.3d 1060, 1062 (7th Cir. 1994).  Because a motion to compel arbitration is essentially a claim that the court lacks subject-matter jurisdiction, the Court may consider facts outside allegations in the Complaint.  Capitol Leasing Co. v. Federal Deposit Insurance Corp., 999 F.2d 188, 191 (7th Cir. 1993).

The Federal Arbitration Act "'is a congressional declaration of a liberal federal policy favoring arbitration agreements' and 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'"  Continental Cas. Co. v. American Nat'l Ins. Co., 417 F.3d 727, 730 (7th Cir. 2005) (citing Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).  Any doubts concerning the scope of arbitration issues are resolved in favor of arbitration.  Id.  Further, courts broadly interpret the Federal Arbitration Act to govern the interpretation,

enforcement, and validity of arbitration agreements in commercial contracts.  See Moses H. Cone Mem'l Hosp., 460 U.S. at 24.

The Federal Arbitration Act provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 3 of the Federal Arbitration Act provides that if an agreement is governed by a valid arbitration provision, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.  Therefore, "if one party to a contract containing an arbitration clause attempts to avoid arbitration and files suit in the district court, the other party may move to stay or dismiss the action on the ground that the Federal Arbitration Act requires the arbitration clause of the contract to be enforced."  Volkswagen of Am., Inc. v. Sud's of Peoria, Inc., 474 F.3d 966, 970 (7th Cir. 2007) (citing 9 U.S.C. § 3 (authorizing a motion to stay); 9 U.S.C. § 4 (authorizing a petition to compel arbitration)).

## III.   ANALYSIS

### A.   The Issue Presented Is One of Arbitrability that the Court Should Decide

An issue not raised by the parties but important here is whether the Court or an arbitrator should determine whether the Franchise Agreement's alternative dispute resolution provision applies to the claims raised by Plaintiff in the Complaint.  To that end, unless the arbitration agreement is clear and unmistakable that an issue of arbitrability is for the arbitrator, the issue should be resolved by the Court.  Employers Ins. Co. v. Wausau v. Century Indem. Co., 443 F.3d 573, 576 (7th Cir. 2006) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).  Issues of arbitrability include disputes regarding whether the parties are bound by a given arbitration clause and disagreements over whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.  Id. (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)).

The dispute here is whether the Franchise Agreement's alternative dispute resolution processes in the concededly binding contract apply to

the claims in Plaintiff's Complaint. This is a question of arbitrability

that the Court should answer.

## B. Plaintiff's Claims that Relate to the Marks Are Properly Before the Court

Moving on, Defendants argue that Plaintiff's claims against all

Defendants for Federal Service Mark Counterfeiting (Count I), Federal

Service Mark Infringement (Count II), Federal Unfair Competition and

False Designation of Origin (Count III), and Common Law Trademark

and Service Mark Infringement and Unfair Competition and Injury to

Business Reputation (Count IV) lack any indication of irreparable loss or

damage. Defendants contend that because Plaintiff has failed to allege

irreparable loss or damage in the Complaint, Plaintiff must follow the

mediation and arbitration processes in Section 14 of the Franchise

Agreement.

The Franchise Agreement contains a Texas choice-of-law provision

and an Addendum to the Franchise Agreement for Illinois Residents that

states: "If any of the provisions of the Franchise Agreement are

inconsistent with applicable Illinois state law, then Illinois state law shall

apply." See d/e 1, Ex. 1 at 27-28, 30. Under both Texas and Illinois law,

if contractual language is unambiguous, the court will not look to parole

evidence and will interpret the contract according to its plain meaning.

Camico Mut. Ins. Co. v. Citizens Bank, 474 F.3d 989, 993 (7th Cir.

2007) (applying Illinois law).  See also State of Texas v. American

Tobacco Co., 463 F.3d 399, 407 (5th Cir. 2006) (citing Sun Oil Co. v.

Madeley, 626 S.W.2d 726, 732-33 (Tex. 1982)) (applying Texas law and

stating that "unambiguous contracts are confined to the four corners of

the document").

Under Section 14 of the Franchise Agreement, any dispute between

the parties must be handled by mediation and then arbitration.  See d/e

1, Ex. 1 at 24-25.  However, Section 14.K. plainly states that parties to

the Franchise Agreement may forego alternative dispute resolution and

file a lawsuit if, during a dispute, a situation arises "relating to the Marks

. . . ."  See d/e 1, Ex. 1 at 25 (emphasis added).  Section 14.K. further

states that in any such lawsuit, "Franchisor shall be free to seek

declaratory relief, restraining orders and/or preliminary injunctive relief

and/or other relief . . . ."  See d/e 1, Ex. 1 at 25.

The language in Section 14.K. of the Franchise Agreement plainly permits Plaintiff to seek money damages, injunctive relief, and attorney's fees and costs in this lawsuit.  Additionally, Plaintiff's claims against all Defendants for Federal Service Mark Counterfeiting (Count I), Federal Service Mark Infringement (Count II), Federal Unfair Competition and False Designation of Origin (Count III), and Common Law Trademark and Service Mark Infringement and Unfair Competition and Injury to Business Reputation (Count IV) are based on Defendants' alleged misuse of the GLASSDOCTOR® Marks.  Under Section 14.K., Plaintiff may forego alternative dispute resolution and pursue litigation if a claim relates to the GLASSDOCTOR® Marks.  Clearly then, Plaintiff's claims in Counts I-IV relate to the GLASSDOCTOR® Marks, and Plaintiff has not sought relief that would preclude application of Section 14.K. as to Counts I-IV or any other Count in the Complaint.  Accordingly, Section 14.K. applies and Counts I-IV need not undergo the alternative dispute resolution processes in Section 14 of the Franchise Agreement.

## C.   Plaintiff's Claim Against Defendants Michael Monaghan and Glass One 1, Inc., Also Relates to the Marks

Additionally, in Count VII, Plaintiff alleges that Defendants Michael Monaghan and Glass 1 One, Inc., Tortiously Interfered With a Contract or Advantageous Business Relationship or Expectancy by attempting to divert customers and business from Plaintiff to Glass 1 One, Inc., through use of the GLASS DOCTOR® Marks and certain of the GLASS DOCTOR® telephone numbers.  Again, Count VII relates to the Marks, and, therefore, Count VII need not undergo the alternative dispute resolution processes in Section 14 of the Franchise Agreement.

## D.   Plaintiff's Claims that Relate to the Franchisor's Proprietary Information, Covenants In the Franchise Agreement, and the Franchisee's Obligations Upon Termination or Non-renewal of the Franchise Agreement Are Properly Before the Court

Defendants Becky Monaghan, Glass Rx, Inc., and Glass 1 One, Inc., also argue that Plaintiff's claims for breach of the Franchise Agreement's covenants not to compete (Count V), the Franchise Agreement's terms that required Defendants to return franchise provided materials and affiliated telephone numbers (Count VI), and Defendant Becky Monaghan's breach of the Guaranty Agreements (Count VIII) are

not properly before the Court.  Defendants Becky Monaghan, Glass Rx, Inc., and Glass 1 One, Inc., argue that, like Counts I-IV and VII, Counts V, VI, and VIII must first undergo the alternative dispute resolution processes in Section 14 of the Franchise Agreement.

However, the alternative dispute resolution requirement in Section 14 is not applicable if, "[d]uring the course of a Dispute, should a situation arise . . . relating to a situation in which Franchisor will suffer irreparable loss or damage unless Franchisor takes immediate action, including but not limited to threatened or actual conduct in violation of Sections 10 and 13 of this Agreement . . . ."  See d/e 1, Ex. 1 at 25. Sections 10 and 13 of the Franchise Agreement include limits on Defendants' ability to compete with Plaintiff following expiration of the Franchise Agreement and that Defendants must return franchise provided materials and cease use of franchise affiliated telephone numbers after expiration of the Franchise Agreement.  See d/e 1, Ex. 1 at 22-23.

Plaintiff's claims for breach of the Franchise Agreement's non-compete provisions (Count V), the Franchise Agreement's terms that

required Defendants to return franchise provided materials and franchise affiliated telephone numbers (Count VI), and the guaranty agreements (Count VIII), in which Becky Monaghan personally guaranteed that she would comply with the post-termination obligations of the Franchise Agreement, are related to Defendants' obligations upon termination or non-renewal of the Franchise Agreement and the limits on Defendants' ability to compete with Plaintiff following expiration of the Franchise Agreement. Sections 10 and 13 specifically limit Defendants' ability to compete with Plaintiff following expiration of the Franchise Agreement and call for Defendants to return franchise provided materials and cease use of franchise affiliated telephone numbers after expiration of the Franchise Agreement. Since claims alleging violations of Section 10 and 13 need not undergo the alternative dispute resolution processes in Section 14 of the Franchise Agreement, Counts V, VI, and VIII are also properly before the Court.

E.  The Confidentiality Agreement Signed By Plaintiff and Defendant
Michael  Monaghan Does Not Contain a Mandatory Alternative
Dispute Resolution Provision

Finally, Defendant Michael Monaghan has joined in the instant

Motion to Compel Mediation and/or Arbitration.  However, Defendant

Michael Monaghan is not a party to the Franchise Agreement and the

Confidentiality Agreement does not contain a provision that requires

alternative dispute resolution.  Therefore, Plaintiff's claim against

Defendant Michael Monaghan in Count IX for breach of the

Confidentiality Agreement need not undergo the alternative dispute

resolution processes in Section 14 of the Franchise Agreement.

Defendant Michael Monaghan has not referenced the forum

selection clause in the Confidentiality Agreement that states: "The

parties agree that any litigation or legal action to enforce or relating to

this [Confidentiality] Agreement shall be filed in Waco, McLennan

County, Texas."  See d/e 1 at 61.  But Defendant Michael Monaghan has

briefly noted that Plaintiff's Breach of the Confidentiality Agreement

claim (Count IX) belongs in a Texas court based on the Texas choice-of-

law provision in the Confidentiality Agreement.

However, Defendant Michael Monaghan has not developed this argument.  Nor has Defendant Michael Monaghan requested a dismissal of the claim against him based on improper venue or transfer of the claim to a Texas court.  Therefore, the Court will not address whether Plaintiff's claim against Defendant Michael Monaghan for breach of the Confidentiality Agreement should be dismissed or transferred based on the forum selection and choice-of-law clauses in the duly executed Confidentiality Agreement.

## IV.   CONCLUSION

Defendants' Motion to Compel Mediation and/or Arbitration and to Dismiss or Stay Proceedings Pending the Completion of Mediation and/or Arbitration (d/e 16) is DENIED.  Defendants SHALL file an answer to Plaintiff's Complaint within 21 days from service of this Opinion.  This matter is referred to Magistrate Judge Byron G. Cudmore for further pretrial proceedings.  IT IS SO ORDERED.

ENTER:  October 9, 2013

FOR THE COURT:                        s/ Sue E. Myerscough
                              SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE